IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DONALD DEMILLE BAKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   CIVIL NO. 08-346-GPM |
| | ) |
| DAVID SZOKE and FERNANDO CASTILLO, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**MURPHY, District Judge:**

This matter came before the Court on Defendants' motion for summary judgment (Doc. No. 29). Plaintiff, Donald Demille Baker, filed this action seeking relief for injuries sustained during his former confinement at the United States Penitentiary/Satellite Camp in Marion, Illinois. Plaintiff was confined at the prison camp between November 2006 and November 2007. In Count 1 of his complaint, Plaintiff sought relief for negligent medical care pursuant to the Federal Tort Claims Act. That claim was dismissed without prejudice and has not been reinstated (*see* Doc. 26). The current motion pertains to Plaintiff's *Bivens* claim (Count 2), in which Plaintiff alleges that David Szoke, M.D., and Fernando Castillo, a physician's assistant, responded to his physical ailments with deliberate indifference.[1] Defendants seek judgment on several grounds, addressed below. Plaintiff filed an untimely response (Doc. 38), which the Court has considered, and failed to appear at the motion hearing held on November 1, 2010.

---

[1] The Court uses the correct spellings for Defendants' names.

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The facts presented are construed in the light most favorable to the non-moving party and all reasonable and justifiable inferences are drawn in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). To survive a summary judgment motion, the opposing party must set forth specific facts showing that there is a genuine issue for trial. *Vanasco v. National-Louis Univ.*, 137 F.3d 962, 965 (7th Cir.1998).

Plaintiff arrived at the prison camp in November 2006. His medical history included a gunshot wound – inflicted in 1992 – and multiple surgeries to repair damage to his head and neck. He also had been diagnosed with a small tumor on his thyroid gland. Plaintiff had hearing loss, recurrent ear infections, nerve damage with facial paralysis, and a gold weight implant in his eye. He also had a hole in one tooth, a slight buildup of plaque, and problems with near and distant vision. When he arrived at the prison camp, Plaintiff requested that Defendants provide him with eyeglasses.

On December 5, 2006, Plaintiff was screened by Dr. Furlong, a dentist, who assessed missing teeth, poor dental hygiene, and multiple cavities. When Plaintiff asked for dental care, Furlong added his name to a list of inmates needing routine dental care.

The following month, Defendant Szoke evaluated Plaintiff's ear ailment, ordered tests, and assessed the results of a bacteriology laboratory report. He also ordered thyroid function tests (TSH and Free T4) (Doc. 30-1, p. 14). Although Dr. Szoke formed the opinion that treatment for

the ear problem was not required, he referred Plaintiff to an otolaryngologist due to the complicated and protracted nature of Plaintiff's ear ailment.

On February 8, 2007, Dr. Furlong prescribed antibiotics. On February 28, 2007, Plaintiff's vision was evaluated by Dr. Fix, an optometrist, who prescribed corrective lenses. On March 19, 2007, Plaintiff's ear condition was evaluated by Dr. Mann, an otolaryngologist.

On April 3, 2007, Dr. Szoke reviewed Dr. Mann's report and suggestions and prescribed medicines indicated for treatment of pain and bacterial infections. He also arranged further testing with a series of CT and CAT scans. Dr. Szoke prepared a surgical transfer request on April 16, 2007, to reflect Dr. Mann's opinion that additional surgery for Plaintiff's ear impairment should be undertaken only in a large tertiary care center with a neurotology and possibly neurosurgery back up. The surgical transfer request was denied in July 2007 because Plaintiff was due to be released from Bureau of Prisons custody shortly.

On May 1, 2007, after Plaintiff failed to report to the Dental Clinic for two scheduled dental appointments in February and March, Dr. Furlong evaluated Plaintiff's dental needs and prescribed antibiotics and pain medication. Dr. Furling resigned his position on June 11, 2007.

The thyroid function tests were performed on Plaintiff in June 2007. Based on the results, Dr. Szoke determined that Plaintiff did not have a thyroid condition requiring treatment.

On August 24, 2007, Defendant Castillo evaluated Plaintiff's complaint of tooth pain and request for artificial teeth, issued pain relief medication, and verified that Plaintiff's name was added to a priority list of inmates needing dental care. At that time, Castillo knew that Dr. Furling had resigned and believed that visiting and/or contract dentists were providing care to inmates with acute dental ailments.

On September 10, 2007, Defendant Castillo re-evaluated Plaintiff's request for dental treatment and assessed his complaint of severe tooth pain. Castillo issued more pain relief medication and again verified that Plaintiff's name was on the priority list for dental care.

Plaintiff was released from confinement on November 11, 2007. By the time he was released, he had not received his prescription eyeglasses.[2] He did not receive dental care beyond antibiotics and pain medication prior to his release. He did not receive treatment for his thyroid. Plaintiff complains that this lack of treatment made his physical conditions worse and caused immeasurable psychological damage. After his release, Plaintiff eventually obtained prescription eyeglasses in February or March 2010. He has not seen a dentist since he was released.

To recover on a *Bivens* claim, a plaintiff must show that each defendant was personally involved in the events causing the deprivation of his constitutional rights. *Gossmeyer v. McDonald*, 128 F.3d 481, 494 (7th Cir.1997); *Lojuk v. Quandt*, 706 F.2d 1456, 1468 (7th Cir. 1983). In other words, the defendants are liable for their own individual misconduct and not the misdeeds of others. *Ascroft v. Iqbal*, __ U.S. __; 129 S. Ct. 1937, 1948 (2009). The evidence must show participation in or a causal link between the defendant and the deprivation. *See Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996). Defendants argue that, with respect to dental and vision care, they simply were not personally involved in those decisions about which Plaintiff complains. Defendant Castillo further argues that he had no involvement in anything related to Plaintiff's purported thyroid or ear issues.

---

[2]It appears from the record that Plaintiff's eyeglass prescription was sent to a medical center in Butner, North Carolina, that manufactures eyeglasses for federal inmates.

PERSONAL INVOLVEMENT

Eyeglasses. The evidence shows that neither Szoke nor Castillo were responsible for treating Plaintiff's vision problems; provided deficient treatment for Plaintiff's vision problems; or interfered with either the treatment prescribed by Dr. Fix or the manufacture of eyeglasses at the medical facility in North Carolina. The record cannot support a finding that Defendants were personally involved in a deprivation of necessary vision care.

Dental. The evidence shows that neither Szoke nor Castillo were responsible for treating Plaintiff's dental problems; provided deficient treatment for Plaintiff's dental problems; or interfered with the treatment planned or provided by Dr. Furlong or other dentists. The record cannot support a finding that they were personally involved in a deprivation of necessary dental care.

Thyroid and Ear. The evidence submitted does not tend to prove that Defendant Castillo was responsible for treating any thyroid or ear conditions that Plaintiff may have had; provided deficient care for any such conditions; or interfered with prescribed testing or treatment.

In sum, Plaintiff has not shown that either Defendant Szoke or Defendant Castillo was personally involved with a deprivation of treatment for his vision and dental disorders. Also, no evidence connects Defendant Castillo to any treatment of Plaintiff's purported thyroid or ear conditions.

DELIBERATE INDIFFERENCE

Tests performed prior to Plaintiff's confinement at the prison camp in Marion indicated that he had a small tumor on his thyroid gland. He maintains that Defendant Szoke failed to check the status of the tumor during his confinement.

The materials on file show that Dr. Szoke ordered a variety of laboratory tests in January 2007, including tests designed to evaluate Plaintiff's thyroid function (TSH and Free $T_4$). Those tests were performed in June 2007, and the results showed "ok" thyroid function in July 2007 (see Doc. 30-2, p. 15).

Plaintiff also claims that Dr. Szoke was deliberately indifferent to Plaintiff's ear ailment. As detailed above, Dr. Szoke referred Plaintiff to an otolaryngologist and even requested transfer for surgery.

In order to establish a violation of the Eighth Amendment, Plaintiff must show two things: that he had a serious medical need and that Dr. Szoke knew about the need and responded with deliberate indifference. Deliberate indifference may be inferred when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment. *Estate of Cole by Pardue v. Fromm,* 94 F.3d 254, 261-62 (7th Cir. 1996). A difference of opinion regarding the way in which a medical condition is to be treated does not give rise to a constitutional violation. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Garvin v. Armstrong*, 236 F.3d 896 (7th Cir. 2001).

The record in this case does not support a reasonable inference that Dr. Szoke responded to Plaintiff's purported ailments with deliberate indifference. As an initial matter, it is doubtful that either Plaintiff's thyroid condition or his ear ailment constituted a serious medical need. Dr. Szoke tested Plaintiff's thyroid and found nothing abnormal. As for Plaintiff's ear ailment, Plaintiff's condition was congenital, meaning that Plaintiff had lived with it for years. It is difficult to see how it became a serious condition during the short year that Plaintiff was confined.

In any event, there is no evidence that Dr. Szoke knew about such serious conditions but deliberately disregarded them. He tested Plaintiff's thyroid and referred Plaintiff for surgery on his ear. The deliberate indifference standard likely does not require such extensive action on his part; it certainly does not require more.

For the foregoing reasons, Defendants' motion for summary judgment (Doc. 29) is **GRANTED**. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants Szoke and Castillo on Count 2.[3] Because Count 1 was not reinstated after being dismissed without prejudice, this action is closed on the Court's docket.

**IT IS SO ORDERED.**

DATED: 11/01/10

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge

---

[3] Because the claim is resolved on the merits, the Court need not reach Defendants' qualified immunity argument.